UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-14360-ROSENBERG/MAYNARD

WEST COAST INVESTORS, LLC,

  Plaintiff,

v.

D.R. HORTON, INC.

  Defendant.
_____/

## ORDER GRANTING DEFENDANT'S
## MOTION TO DISMISS FIRST AMENDED COMPLAINT

THIS CAUSE is before the Court on Defendant D.R. Horton, Inc.'s Motion to Dismiss Plaintiff West Coast Investors, LLC's First Amended Complaint. DE 24. The Court has considered the Motion, Plaintiff's Response (DE 33), and Defendant's Reply (DE 35), along with the record, and is fully advised in the premises. For reasons that follow, the Motion is GRANTED.

### I.    BACKGROUND

Plaintiff West Coast Investors, LLC ("WCI") created Tesoro, a real estate development in Port St. Lucie, Florida. In 2012, WCI entered into a contract (the "Builder's Agreement") with Defendant D.R. Horton, Inc. ("Horton"), pursuant to which Horton was to purchase and construct homes on up to 300 lots in Tesoro. Prior to entering the Builder's Agreement, Horton allegedly represented to WCI that it would build no fewer than 30 new homes per year in Tesoro. WCI agreed to sell lots to Horton at a discounted rate because the rapid construction of homes would lead to greater membership revenue for the Tesoro Country Club (the "Club), and Horton allegedly guaranteed at least 30 new Club memberships per year.

In 2012 and 2013, Horton purchased 185 lots, but as of 2019, only 32 homes had been built. Of those 32, only 10 were sold; the remaining became rental properties, which do not result in Club

memberships. There are no unoccupied "model" homes at Tesoro, which allegedly violates the Builder's Agreement, and Horton has allegedly abandoned Tesoro with the exception of the rental properties. WCI sues Horton, alleging that Horton's misrepresentations regarding the rate at which homes would be constructed have damaged WCI in the form of lost revenue for the Club.

WCI filed a complaint in state court on September 3, 2019, and Horton removed the action on September 27, 2019, on the basis of diversity jurisdiction.[1] DE 1. Horton moved to dismiss the complaint, and in response, WCI filed the First Amended Complaint on November 13, 2019, claiming negligent misrepresentation, fraud in the inducement, and breach of the implied covenant of good faith and fair dealing. DE 24. Horton moves to dismiss the First Amended Complaint, arguing that WCI failed to state a claim with respect to each count, and further, that its claims are barred by the statute of frauds and statute of limitations.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). At the motion to dismiss stage, the "plaintiff's factual allegations are accepted as true. . . . However, conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326

---

[1] WCI is a limited liability company, and each of its members is a Florida citizen. *Rolling Greens MHP, LP v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004) ("[A] limited liability company is a citizen of any state of which a member of the company is a citizen."). D.R. Horton is a Delaware corporation with its principal place of business in Texas. WCI seeks in excess of $20 million in damages. Accordingly, the Court has jurisdiction pursuant to 28 U.S.C. § 1332.

F.3d 1183, 1185 (11th Cir. 2003). Finally, "if the complaint contains a claim that is facially subject to an affirmative defense, that claim may be dismissed under Rule 12(b)(6)." *LeFrere v. Quezada*, 582 F.3d 1260, 1263 (11th Cir. 2009).

### III. DISCUSSION

Under Florida law, a claim for negligent misrepresentation requires: (1) a misrepresentation of a material fact that the defendant believed to be true but which was in fact false; (2) that defendant should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely on the misrepresentation; and (4) the plaintiff acted in justifiable reliance upon the misrepresentation, resulting in injury. *Arlington Pebble Creek, LLC v. Campus Edge Condo. Ass'n*, 232 So. 3d 502, 505 (Fla. Dist. Ct. App. 2017). A claim for fraud in the inducement requires: (1) the defendant made a false statement concerning a material fact; (2) the defendant knew or should have known that the representation was false; (3) the defendant intended to induce the plaintiff to act in reliance on the false statement; and (4) the plaintiff acted in justifiable reliance on the representation and was injured as a result. *Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1029–30 (11th Cir. 2017) (citing *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)).

The basis for both the negligent-misrepresentation claim and the fraud-in-the-inducement claim is Horton's alleged promise that "no fewer than 30 new homes would be built per year by DR Horton at Tesoro." DE 24 at 2 ¶ 7. This representation allegedly induced WCI to enter into the Builder's Agreement and to sell Horton lots at discounted rates. WCI attached the Builder's Agreement to the First Amended Complaint, which makes the Builder's Agreement part of the First Amended Complaint for all purposes. Fed. R. Civ. P. 10(c). The Builder's Agreement includes the following merger clause:

> This Agreement constitutes the sole and entire agreement between the parties with regard to its subject matter. All prior discussions, negotiations and agreements regarding the subject matter of this Agreement are merged herein and shall have no

3

further force or effect. ***No representations or warranties have been made by either party except as stated herein.***

DE 16 at 25 (emphasis added). WCI's claim for negligent misrepresentation and fraud in the inducement fail as a matter of law in light of the Builder's Agreement merger clause. Both claims require as an element "justifiable reliance" by WCI. Under Florida law, reliance on a prior oral representation where a jointly drafted contract includes a merger clause is unjustifiable. *See Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1315 (11th Cir. 1998) (holding as a matter of law that it was unreasonable for party to rely on oral guarantee "that it chose not to reduce to writing"); *see also Sas v. Serden Tech., Inc.*, No. 12-cv-61296, 2013 WL 12086638, at *7 (S.D. Fla. Dec. 3, 2013) ("Where the written contract contains a merger clause and both parties had an opportunity to participate in drafting the contract, a plaintiff's reliance on a separate oral promise is not justifiable . . . ."). Accordingly, Counts One and Two are dismissed with prejudice with respect to any alleged representation occurring prior to the parties' execution of the Builder's Agreement.

An independent basis for the Court's holding is that Counts One and Two are barred by the statute of frauds. Florida's statute of frauds provides:

> No action shall be brought . . . upon any agreement that is not to be performed within the space of [one] year from the making thereof . . . unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith . . . .

Fla. Stat. § 725.01. WCI argues that the statute of frauds is inapplicable because none of the counts in the First Amended Complaint are for breach of contract. This is incorrect. A claim's label does not determine whether the statute of frauds applies; its substance does. The statute "bars any claim which requires as its gravamen[] proof of a promise or agreement," not in writing and incapable of being performed in one year. *Ostman v. Lawn*, 305 So. 2d 871, 872 (Fla. Dist. Ct. App. 1974); *see also Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1345 (S.D. Fla. 1999) ("Florida law explicitly prohibits a plaintiff from reformulating an oral contract as a

misrepresentation for the purpose of avoiding the Statute of Frauds.").

The statute of frauds facially bars WCI's negligence and fraud claims. First, each claim requires proving that Horton promised to build 30 homes per year, which brings the claims within the statute of frauds. *See Ostman*, 305 So. 2d at 872. Second, this promise could not have been performed within one year; WCI describes it as a "minimum yearly build-out schedule." DE 16 at 2 ¶ 7. Merely constructing 30 homes in the first year after the agreement would not represent complete performance of an agreement to build 30 new homes ***per year***, which necessarily entails more than one year of building. Third, this promise was not reduced to writing and signed by Horton. The "30 homes per year" representation appears nowhere in the Builder's Agreement. Further, it is clear that there can be no valid writing representing this promise. WCI alleges that the promise was made "prior to entering into the Builder's Agreement." DE 16 at 2 ¶ 7. Therefore, even if there were a signed writing representing Horton's alleged promise, it would have been merged into the Builder's Agreement by operation of the plain language of the merger clause. Accordingly, Counts One and Two are barred by the statute of frauds. The Court does not reach Horton's other arguments for dismissal, including the statute of limitations and the parol evidence rule.

Finally, a claim for breach of the implied covenant of good faith and fair dealing will not lie absent an "accompanying action for breach of an express term of the agreement." *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n*, 94 So. 3d 541, 548 (Fla. 2012); *see also Burger King Corp v. Weaver*, 169 F.3d 1310, 1318 (11th Cir. 1999) (holding that the plaintiff's "failure to identify an express contractual provision that has been breached dooms his claim for breach of the implied covenant of good faith and fair dealing"). Count Three is based on the allegation that:

> [Horton] made material, false and misleading representations and/or misrepresentations that it would (i) quickly and aggressively build homes at Tesoro and that no fewer than 30 new homes would be built per year by DR Horton at Tesoro; and (ii) at all times maintain a model home and sales team at Tesoro to market the Lots, homes and Tesoro.

5

DE 16 at 8 ¶ 39. The Court cannot discern from the First Amended Complaint any allegation that an express contractual duty has been breached. WCI makes two oblique references to the Builder's Agreement in Count Three. First, it incorporates by reference an allegation that "[c]urrently, DR Horton has no current unoccupied 'model' homes at Tesoro, in violation of the Builder's Agreement." DE 16 at 3 ¶ 9. Even if this allegation properly identified the contractual provision to which it relates, it would still fail to state a claim. The Builder's Agreement, as amended, provides that "Buyer will build and continuously maintain as long as this Agreement is in effect . . . one (1) Model Home in the Subdivision." DE 16 at 54. It goes on to state: "Should Buyer fail to perform its obligations under this Section with respect to the Model Home . . . Seller shall, as Seller's ***sole and exclusive remedy hereunder***, have the right to terminate this Agreement and to retain the Earnest Money then on deposit." *Id.* WCI "waives any other remedies which might be available to it upon default by Buyer under this Section . . . ." *Id.* WCI is not entitled to avoid the waiver of remedies in this provision by styling its claim as an implied-covenant claim. *QBE Ins. Corp.*, 94 So. 3d at 548 (implied-covenant claim cannot be maintained "where application of the covenant would contravene the express terms of the agreement"); *Ins. Concepts and Design, Inc. v. Healthplan Serv., Inc.*, 785 So. 2d 1232, 1234 (Fla. Dist. Ct. App. 2001) ("[T]he implied covenant of good faith should not be invoked to override the express terms of the agreement between the parties."). Accordingly, this provision cannot support WCI's claim in Count Three as a matter of law.

Second, WCI alleges that "[t]he representations arnd/or [sic] misrepresentations made by DR Horton to WCI were in violations [sic] of the provisions of the Builder's Agreement which specified the minimum number of homes to be built in the agreed upon time frame by the [sic] DR Horton." DE 16 at 9 ¶ 41. This statement does not describe the representations/misrepresentations at issue, does not identify the contractual provision requiring Horton to build homes at any particular rate, and

6

does not contain enough factual content to permit "the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Finally, WCI was alerted to the need to show a breach of an express contractual provision in Horton's Motion to Dismiss the first Complaint. DE 8 at 16 ("[A]n action for breach of the implied covenant of good faith and fair dealing cannot be maintained in the absence of breach of an express contract provision or for the purpose of varying the terms of an express contract."). WCI failed to cure the deficiency on amendment. Accordingly, Count Three is dismissed with prejudice.

It is **ORDERED AND ADJUDGED**:

1. Defendant's Motion to Dismiss [DE 24] is **GRANTED**.

2. The First Amended Complaint [DE 16] is **DISMISSED WITH PREJUDICE**.

**DONE AND ORDERED** in Chambers in West Palm Beach, Florida, this 31st day of January, 2020.

 /s/ Robin L. Rosenberg
 ROBIN L. ROSENBERG
 UNITED STATES DISTRICT JUDGE

Copies furnished to: All counsel of record via CM/ECF